Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Jesse C. Ferrantella CA Bar No. 279131
jesse.ferrantella@ogletree.com
Cameron O. Flynn CA Bar No. 301830
cameron.flynn@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA  92122
Telephone:     858-652-3100
Facsimile:      858-652-3101

Attorneys for Defendant ROTO-ROOTER SERVICES COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHAWN KIEON SIMPKINS, on behalf of himself and all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>ROTO-ROOTER SERVICES CO., an Iowa corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[28 U.S.C. § 1332(d) (Class Action Fairness Act)]<br><br>*[Filed concurrently with Civil Cover Sheet; Certificate of Interested Parties; and Declarations of Jeff Finke and Jesse Ferrantella]*<br><br>Complaint Filed: August 27, 2024<br>Removal Date:    October 4, 2024<br>Trial Date:          Not Set |

Defendant ROTO-ROOTER SERVICES COMPANY ("Roto-Rooter") removes this action, originally commenced in the Superior Court of the State of California for the County of Alameda, Case No. 24CV089223, to the United States District Court for the Northern District of California. Removal is proper under 28 U.S.C. Section 1332(d) (the Class Action Fairness Act ["CAFA"]) and Section 1446 because (1) Plaintiff and other members of the putative class are citizens of a State different from Roto-Rooter; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied here.

I.      **BACKGROUND AND SUMMARY OF PLEADINGS**

1.      On September August 27, 2024, Plaintiff commenced this action in the Superior Court of California, County of Alameda, Case No. 24CV089223. Plaintiff served Roto-Rooter with their Complaint on September 4, 2024. Declaration of Jesse Ferrantella ("Ferrantella Decl."), ¶¶ 2-3, Exhibits ["Ex."] A-B, Summons and Complaint and Service of Process.

2.      On October 3, 2024, Roto-Rooter filed its Answer to Plaintiff's Complaint in the Alameda County Superior Court. Ferrantella Decl., ¶ 3; Ex. C, Answer. Defendant's Answer to the Complaint is attached hereto as Exhibit B. Ferrantella Decl., ¶ 3, Ex. C.

3.      Plaintiff's Complaint seeks damages and penalties on behalf of himself and ten classes and sub-classes: Hourly Employee Class, Meal Period Sub-Class, Rest Period Sub-Class, Reporting Time Pay Sub-Class, Waiting Time Penalties Sub-Class, Sick-Pay Class, Vacation Pay Class, Wage Statement Class, Expense Reimbursement Class, and UCL Class. Complaint, ¶ 11. The Hourly Employee Class is defined as "[a]ll persons employed by Defendants, collectively or separately, and/or any staffing agencies and/or any third parties in hourly or non-exempt positions in California four years prior to the filing of this action and ending on the date that final judgment is entered in this action." Complaint, ¶ 11(a).

4.      A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of Alameda. Exhibits A-C contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action.

## II. REMOVAL IS TIMELY

5. The time to remove under 28 U.S.C. § 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Here, the Complaint does not contain all facts and data to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. Accordingly, as mentioned, it is not possible to ascertain solely from the Complaint all facts and data that this case is removable, and, to date, Defendant has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this missing information. Ferrantella Decl., ¶ 6. Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). As set forth below, Defendant has only recently discovered such evidence after collection and review of relevant records of potential class members and an analysis of the estimated damages based on reasonable assumptions drawn from the Complaint. Therefore, Defendant is timely removing this case based on that discovery, as well as the allegations in the Complaint.

6. Even if it could be determined from the four corners of the Complaint that this action is removable, this Notice of Removal would still be timely. Defendant accepted service of the Complaint and Summons Defendant on September 4, 2024. Ferrantella Decl., ¶¶ 2-3, Ex. B. As such, the time to remove could not expire, at the earliest, until October 4, 2024, the first court day which is 30 days after service of the Summons and Complaint. This Notice is therefore timely, as it was filed on that date.

## III. REMOVAL IS PROPER UNDER CAFA

7. Removal is proper given Plaintiff's allegations and claims. Plaintiff's Complaint asserts the following claims on a class-wide basis: (1) failure to provide meal period premiums (Lab. Code §§ 226 and 512(a)); (2) unpaid rest period premiums (Lab. Code § 226.7); (3) unpaid overtime and hourly wages (Lab. Code §§ 510, 1198, 1194, 1197, and 1197.1); (4) failure to pay proper

reporting time wages; (5) failure to pay proper sick pay (Lab. Code § 246); (6) failure to pay proper vacation wages (Lab. Code § 227.3); (7) non-compliant wage statements (Lab. Code § 226(a); (8) final wages not timely paid (Lab. Code §§ 201 and 202); (9) unreimbursed business expenses (Lab. Code § 2802); and (10) violation of California Business and Professions Code §§ 17200, et seq. Ferrantella Decl., ¶ 2, Ex. A, Complaint.

8. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. Section 1446.

9. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from Defendant; the number of individuals in Plaintiff's proposed classes in the aggregate is over 100; and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

**A. CAFA's Diversity of Citizenship Requirement Is Satisfied**

10. CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCX), 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015) (citing *California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014)); *Rodgers v. Central Locating Service, Ltd.*, 412 F. Supp. 2d 1171, 1175 (W.D. Wa. 2006); 28 U.S.C. §§ 1332(d)(2), 1453(a), (b).

11. Plaintiff Marshawn Kieon Simpkins ("Plaintiff") is "an individual residing in the State of California." Complaint ¶ 5; *see also* Declaration of Jeff Finke ("Finke Decl."), ¶ 3.

12. In addition to Plaintiff, numerous putative class members are citizens of the state of California. Finke Decl., ¶ 3. Thus, either the class members or Plaintiff may be treated as citizens of California for purposes of this removal.

13. At all relevant times, Roto-Rooter has been a citizen of Iowa and Ohio. Under 28 U.S.C. § 1332(c)(1), a corporation shall be deemed to be a citizen of every State and foreign state in which it has been incorporated and of the State or foreign state where it has its principal place of business. A company's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," i.e., the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). The "nerve center" is normally where the corporation maintains its headquarters. *Id*.

14. Roto-Rooter's principal place of business is Ohio because operations are directed, controlled, and managed out of its offices there. Roto-Rooter is incorporated in Iowa, and has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. Finke Decl., ¶ 2. Accordingly, Roto-Rooter is a citizen of Iowa and Ohio, and not a citizen of California. *See id*.

15. Minimal diversity is established because Plaintiff or a putative class member is a citizen of California and Roto-Rooter is not; it is a citizen of Iowa and Ohio. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

**B.   CAFA's Class Size Requirement Is Satisfied**

16. Plaintiff brings the Action pursuant to California Code of Civil Procedure § 382 on behalf of the following "Hourly Employee Class" which Plaintiff defines as "All persons employed by Defendants, collectively or separately, and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California four years prior to the filing of this action and ending on the date that final judgment is entered in this action." Complaint, ¶ 11(a).

17. While Roto-Rooter disputes Plaintiff's allegations, and retains defenses to them, from August 27, 2020, through the date of the Finke Declaration, the putative class includes, in the aggregate, at least 1,510 non-exempt employees. Finke Decl., ¶ 4. Thus, CAFA's size requirement is satisfied.

**C.   CAFA'S Requisite $5 Million Amount in Controversy Is Satisfied**

18. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

19. Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5,000,000]." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). Courts look to the allegations in the complaint in determining the amount in controversy. *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint").

20. For purposes of removal, "[i]n determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806 (9th Cir. 2017) (citing *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012)). In determining whether the amount in controversy requirement is met, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

21. The Ninth Circuit stated "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). In assessing the amount in controversy, a removing defendant may rely on a chain of reasoning that includes assumptions. *Id*. at 925. Assumptions are reasonable if they are founded on the allegations of the complaint. *Id*.

22. Among other things, Plaintiff seeks the recovery of unpaid wages, waiting time penalties, itemized wage statement penalties, meal and rest period premium pay, and reasonable attorney fees and costs, on behalf of himself and the putative classes. (*See* Ferrantella Decl., ¶ 2, Ex. A, Complaint.) Taking the Complaint as true, the allegations therein – when coupled with the information collected, reviewed, and analyzed by Roto-Rooter – satisfy the $5 million threshold for

CAFA removal.[1] *See* 28 U.S.C. § 1332(d).

### 1. Relevant Putative Class Group Data

23. Plaintiff seeks to certify a class group from August 27, 2020, to the present. From August 27, 2020, to the Notice of Removal, the putative class includes, in the aggregate, at least 1,510 non-exempt employees in California. Those employees worked at least 188,280 workweeks. The average hourly rate during the alleged class period is approximately $22.04. Finke Decl., ¶ 4.

24. From August 27, 2021, to the present, at least 515 non-exempt employees and putative class members in California separated their employment. The average hourly rate during the alleged class period is $23.43. This equals an average daily rate (8 hours) of approximately $187.44. Finke Decl., ¶ 5.

25. From August 27, 2023, to the present, there were approximately 47,710 workweeks for at least 1,071 non-exempt employees in California. Roto-Rooter pays weekly. Limiting to a maximum of 40 pay periods per person, there would be approximately 37,294 pay periods. Finke Decl., ¶ 6.

### 2. Waiting Time Penalties

26. Plaintiff defines the Waiting Time Penalties Sub-Class as "all Hourly Employee Class members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered." Complaint, ¶ 11(e).

27. Plaintiff alleges that "Defendants have maintained a policy or practice of paying Waiting Penalties Sub-Class members their final wages without regard to the requirements of Labor Code sections 201 or 202 by failing to timely pay them all final wages." (Complaint, ¶ 114.) Plaintiff further alleges that "Plaintiff, on behalf of himself and Waiting Time Penalties Sub-Class members, seek[] waiting time penalties from the dates that their final wages have first become due until paid up to a maximum of thirty days, and interest thereon." (*Id*. at ¶ 116.)

---

[1] In alleging the amount in controversy for purposes of CAFA, Roto-Rooter does not concede in any way that the allegations in the Complaint are true or accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does Roto-Rooter concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the action. Roto-Rooter also does not concede Plaintiff can bring his claims on class or representative basis, or that the appropriate venue for the claims is in court.

28. California Labor Code section 203 provides "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010). The limitations period for such waiting time penalty claims is three years. *Id.* at 1400.

29. From August 27, 2020, to the present, at least 515 putative waiting time penalties subclass members in California separated their employment. The average hourly rate for those individual is $23.43. This equals an average daily rate (8 hours) of approximately $187.44. Finke Decl., ¶ 5.

30. Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time penalties alone is at least **$2,895,948** ($23.43 per hour x 8 hours x 30 days x 515 putative class members). *See Crummie v. Certified Safety, Inc.*, No. 17-CV-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. 2017) (finding it "completely reasonable" for the defendant to assume the maximum, 30-day period of waiting time penalties where the allegations support the assumption); *Marentes v. Key Energy Servs. Cal., Inc.*, No. L13–CV–02067 AWI, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the putative class members.").

### 3. Wage Statement Penalties

31. Plaintiff defines a "Wage Statement Class" as "[a]ll persons employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered." Complaint, ¶ 11(h).

32. Plaintiff alleges "Defendants have failed to provide Plaintiff and Wage Statement Class members with written wage statements [as required by Labor Code section 226(a).] Additionally, the wage statements issued to class members failed to account for the unpaid minimum wages, overtime, and premium pay wages." Ferrantella, Decl., ¶ 2, Ex. A, Complaint, ¶ 103. Plaintiff further alleges that "Defendants failed to provide Plaintiff and Wage Statement Class Members with pay stubs as required by Labor Code § 226, applicable Wage Orders, and DLSE Opinion Letters.

1  Plaintiff's and Wage Statement Class members' wage statements were only provided in electronic format in violation of Labor Code § 226" and that "Defendants failed to comply with Labor Code section 226(a)(8) as the wage statements issues to Plaintiff and Wage Statement Class Members failed to state 'the name and address of the legal entity that is the employer.'" Complaint, ¶¶ 104-105.

33. On behalf of himself and the putative class, Plaintiff seeks statutory penalties under California Labor Code § 226(e), which provides for the greater of all actual damages or $50.00 for the initial pay period in which a violation occurred and $100.00 for each subsequent pay period in which a violation occurred, not to exceed $4,000.00 per putative class member, as well as reasonable attorneys' fees and costs. Complaint, ¶ 108; Cal. Lab. Code § 226(e).

34. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. §340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal. App.4th 1454, 1469 (2015).

35. As noted above, from August 27, 2023, to the present, at least 1,071 non-exempt employees in California worked at least 37,294 pay periods, capping each employee at no more than 40 pay periods. Finke Decl., ¶ 6. Therefore, based on Plaintiff's allegations, the amount in controversy for wage statement penalties is at least **$3,678,850** (1,071 wage statements x $50 = $53,550; 36,223 wage statements x $100 = $3,622,300 [$53,550 + $3,622,300 = $3,678,850]).

### 4. Rest Periods

36. Plaintiff defines the Rest Period Sub-Class as "[a]ll Hourly Employee Class members who worked a shift of at least three and one-half (3.5) hours the four years prior to the filing of this action and ending on the date that final judgment is entered in this action." Complaint, ¶ 11(c).

37. Plaintiff alleges that "Plaintiff and Class members were not separately compensated for rest breaks when paid strictly on a commissions-earnings basis." Complaint, ¶ 22. Plaintiff further alleges that "Defendants had a common policy and practice of systemically denying Plaintiff and Class Members the opportunity to take rest periods in compliance with the California law." *Id.* at ¶ 27. Plaintiff further alleges that "at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the Rest Period Sub-Class

1  with net rest period of at least ten (10) uninterrupted minutes for each four (4) hour work period, or
2  major fraction thereof, as required by the applicable Wage Order." *Id.* at ¶ 59. Further, "Plaintiff, on
3  behalf of himself and Rest Period Sub-Class members, seeks to recover unpaid premium wages,
4  interest thereon, and costs of suit." *Id.* at ¶ 61.

5      38.     Plaintiff's tenth cause of action for violation of the UCL is partially premised on the
6  rest period cause of action. Complaint, ¶ 127.

7      39.     The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof.
8  Code § 17208. A plaintiff may seek to recover meal and rest period premium pay as a form of
9  restitution under the UCL, under the theory that premium pay constitutes wages. *See Tomlinson v.*
10 *Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896-97 (C.D. Cal. 2005). Plaintiff thus seeks to certify
11 rest period classes dating back four years. Complaint, ¶ 11(c), (j).

12     40.     As noted above, from August 27, 2020, to the present, at least 1,510 non-exempt
13 employees in California worked approximately 188,280 workweeks. Finke Decl., ¶ 4.

14     41.     A rest period violation rate of 25% is conservative considering Plaintiff's allegations.
15 Plaintiff first alleges that he and the putative class were not separately compensated for rest breaks,
16 which, if true, would mean that they did not receive lawful rest breaks and support a 100% violation
17 rate. Complaint, ¶ 22. Plaintiff further alleges "systematic" rest break violations and a "policy and
18 practice" of rest period violations. *Id.* at ¶ 27. When faced with allegations of a policy and practice
19 of regular meal and rest violations, numerous courts have found similar and higher violation rates
20 appropriate. *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60%
21 violation rate for the meal period claim and a 30% violation rate for the rest period claim proper
22 where the complaint alleged only that Defendant had a "***policy and practice***" of meal and rest period
23 violations); *Alvarez v. Office Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D.
24 Cal. Nov. 30, 2017) (upholding a 60% violation rate for missed meal and rest periods, even where
25 the complaint was "indeterminate" with respect to violation rates, because defendant "adopted and
26 maintained ***uniform policies, practices, and procedures***" that caused violations.)

27     42.     Therefore, assuming an average of five qualifying shifts per workweek and a
28 conservative 25% violation rate based on Plaintiff's allegations, the amount in controversy rest

period premium pay is at least **$5,187,114** ($22.04 per hour x 5 shifts per work week x 188,280 work weeks = maximum of $20,748,456 x .25 = $5,187,114).

### 5. Meal Periods

43. Plaintiff defines a Meal Period Sub-Class as "[a]ll Hourly Employee Class members who worked in a shift in excess of five hours during the four years prior to the filing of this action and ending on the date that final judgment is entered in this action." Complaint, ¶ 11(b).

44. Plaintiff alleges that "Defendants had a common policy and practice of systemically denying Plaintiff and Class Members the opportunity to take meal periods in compliance with the California law." Complaint, ¶ 25. Plaintiff further alleges that "at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the Meal Period Sub-Class with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 and the applicable Wage Order." *Id.* at ¶ 46. Further, Plaintiff alleges that "[p]ursuant to Labor code section 204, 218.6, 226.7 and 512, Plaintiff, on behalf of himself and the Meal Period Sub-Class members, seeks to recover unpaid premium wages, interest thereon, and costs of suit." (Complaint, ¶ 51.)

45. Plaintiff's tenth cause of action for violation of the UCL is partially premised on the meal period cause of action. Complaint, ¶ 127.

46. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. A plaintiff may seek to recover meal and rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896-97 (C.D. Cal. 2005). Plaintiff thus seeks to certify meal period classes dating back four years. Complaint, ¶ 11 (b), (j).

47. As noted above, from August 27, 2020, to the present, at least 1,510 non-exempt employees in California worked 188,280 workweeks, with an average of five shifts per workweek. Finke Decl., ¶ 4.

48. A meal period violation rate of 25% is appropriate considering Plaintiff's allegations of a "policy and practice" of meal period violations. Indeed, when faced with allegations of a policy

and practice of regular meal and rest violations, numerous courts have found similar and higher violation rates appropriate. *See Bryant*, 284 F. Supp. 3d at 1151 (finding a 60% violation rate for the meal period claim and a 30% violation rate for the rest period claim proper where the complaint alleged only that Defendant had a "***policy and practice***" of meal and rest period violations); *Alvarez*, 2017 WL 5952181, at *3 (upholding a 60% violation rate for missed meal and rest periods, even where the complaint was "indeterminate" with respect to violation rates, because defendant "adopted and maintained ***uniform policies, practices, and procedures***" that caused violations); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) ("courts have found violations rates of 50% proper with language such as '***policy and practice***;'" finding a "50% violation rate for the meal periods and a 25% violation rate for the rest periods" were "reasonable"); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate [or 2.5 violations per week per claim; or 5 total] on both meal and rest period claims where plaintiffs alleged that "Plaintiffs and the class members sometimes did not receive all of their meal periods in a lawful fashion" and Defendant "maintained a ***policy or practice*** of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods.")

49.  Thus, assuming an average of five qualifying shifts per workweek and a 25% violation rate based on Plaintiff's allegations, the amount in controversy meal period premium pay is at least **$5,187,114** ($22.04 per hour x 5 shifts per work week x 188,280 work weeks = maximum of $20,748,456 x .25 = $5,187,114).

### 6. Further Data

50.  For purposes of this removal, waiting time penalties, wage statement penalties, and meal and rest period penalties are more than sufficient to support the required $5,000,000 threshold amount in controversy. However, Roto-Rooter has provided data sufficient to calculate and support, based on Plaintiff's allegations, an even greater amount in controversy based on alleged unpaid time, reimbursements, and Plaintiff's other claims. Finke Decl., ¶¶ 4-6. There is no doubt that, as alleged, the amount in controversy exceeds the requisite threshold.

### 7. Attorney Fees

51. There is at least **$16,949,026** in controversy ($2,895,948 in waiting time penalties + $3,678,850 in wage statement penalties + $5,187,114 meal period premium pay + $5,187,114 rest period premium pay = $16,949,026).

52. Plaintiff also seeks attorney fees in connection with the above claims. Complaint, Prayer for Relief. In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Altamirano v. Shadow Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. Jan. 14, 2013) (including 25% attorney's fees to increase the amount-in-controversy to above $5,000,000 CAFA threshold).

53. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is $4,237,256. ($16,949,026 x 0.25 = $4,237,256.)

### 8. Summary

54. Based on Plaintiff's allegations, the amount in controversy is at least **$21,186,282.** ($4,237,256 [attorney fees] + $16,949,026 [alleged damages]). Even excluding Plaintiff's other claims, including reimbursement, and overtime wages and minimum wages, the Complaint easily satisfies the $5 million threshold.

## IV. ROTO-ROOTER HAS SATISFIED ALL OTHER PREREQUISITES FOR REMOVAL

55. ***Removal Was Timely***. Roto-Rooter was served with Plaintiff's Complaint on September 4, 2024. Ferrantella Decl., ¶¶ 2-3, Ex. B. This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because assuming the time period began to run from the date of service, it is within thirty (30) days from when Roto-Rooter was served with the pleadings setting forth the claims

for relief upon which this removal is based. Under 28 U.S.C. Section 1446(b) and Federal Rule of Civil Procedure 6(a), the time to remove could not expire, at the earliest, until after October 4, 2024, the first day which is 30 days after Roto-Rooter was served with the Summons and Complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This removal is timely.

56.  **State Court Within this Court's Jurisdiction**. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 84(a) and 1391 because the county in which the State Court Action was pending (Alameda) is found within this District.

57.  **State Court Pleading Attached**. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant or filed by Roto-Rooter are attached hereto as the following exhibits, including Plaintiff's Summons, Complaint, Civil Case Cover Sheet, and Notice of Case Management Conference (Exhibit A); Notice of Service of Process (Exhibit B); and Defendant's Answer to Plaintiff's Complaint (Exhibit C). (*See* Ferrantella Decl., ¶¶ 2-4; Exhibits A-C.)

58.  **Filing and Service of Notice of Removal**. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Alameda.

59.  If this Court has a question regarding the propriety of this Notice of Removal, Roto-Rooter requests it issue an Order to Show Cause so it can provide additional briefing on the grounds for this removal, including further detail regarding the full amount in controversy.

## RESERVATION OF RIGHTS

This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, Roto-Rooter requests that the above action pending before the Superior Court of the State of California for the County of Alameda be removed to the United States District Court for the Northern District of California.

DATED:  October 4, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Spencer C. Skeen*
Spencer C. Skeen
Jesse C. Ferrantella
Cameron O. Flynn
Attorneys for Defendant ROTO-ROOTER SERVICES COMPANY